IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| DL Farms LLC, and Darren Tronson,<br><br>Plaintiffs,<br><br>v.<br><br>United States Department of Agriculture, Risk Management Agency, and Marcia Bunger,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

[¶1]    Plaintiffs DL Farms LLC and Darren Tronson bring this action against the United States Department of Agriculture, Risk Management Agency ("RMA"), and Marcia Bunger, in her official capacity, as the Suspension and Debarment Official ("SDO") of RMA, for violations of the Administrative Procedure Act ("APA"), and allege as follows:

## INTRODUCTION

[¶2]    This is an action under the Administrative Procedure Act challenging RMA's recent suspension of Plaintiffs from participating in any federally funded government program and/or contract.

[¶3]    Specifically, on January 12, 2023, RMA issued a NOTICE OF SUSPENSION FROM PARTICIPATION IN UNITED STATES GOVERNMENT PROGRAMS ("Suspension Notice") to "Darren Tronson dba DL Farms LLC" based on a criminal indictment for purported false claims made in connection with crop indemnities sought for the 2017 and 2018 crop years.

[¶4]    RMA's proposed action is a significant departure from the applicable regulatory guidance.  The immediate suspension of Plaintiffs participation in federal crop insurance

will no doubt result in irreparable harm to DL Farms LLC and Tronson – a fifth-generation farmer.

[¶5]   Significantly, RMA fails to make a prima facie case for suspension.  It offers only a single conclusory sentence purporting to justify the critical requirement that there be an "immediate need" to suspend Plaintiffs.  This requirement, of course, is an essential one: without an "immediate need," there is no justification to impose the draconian sentence of an immediate suspension while the pending criminal and civil litigation play out.

[¶6]   Underscoring the lack of any exigency, RMA did not suspend Plaintiffs until nearly six years after RMA started its investigation into Plaintiffs' farming practices, three years after RMA apparently conducted their last substantive interview into Plaintiffs' farming practices, nearly two years after RMA issued a determination on Plaintiffs' farming practices on reconsideration, thirteen months after RMA first asserted a counterclaim against Plaintiffs for purported false claims, and nearly five months after the criminal indictment.

[¶7]   In addition, these actions are not based on the RMA's independent fact-finding. Instead, the RMA relies wholly on an indictment that is inextricably intertwined with a pending civil action.  As set forth below, Plaintiffs have legitimately challenged the factual allegations underlying the indictment and civil litigation, to the point of which trial in the criminal litigation has been stayed until March 2024 to abide resolution of the civil litigation.

[¶8]   The inexplicable delay in RMA's administrative action, the failure of RMA to base its suspension on any "immediate need" to protect the public interest, and Plaintiffs' legitimate challenges to the factual allegations underlying the indictment and civil litigation

reflect that RMA is improperly using the suspension regime as improper settlement leverage and to punish Plaintiffs.

[¶9]   RMA's punitive suspension of Plaintiffs is arbitrary and capricious, not in accordance with the law and the Agency's own regulations and must be vacated as a result.

## PARTIES

[¶10]   DL Farms LLC ("DL Farms") is a North Dakota limited liability company engaged in farming in Traill County, Buxton, North Dakota.  Each year, DL Farms purchases a multi-peril crop insurance ("MPCI") policy for its commodities.  The MPCI policy is reinsured by the Federal Crop Insurance Corporation ("FCIC") under the provisions of the Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq.

[¶11]   Darren Tronson is a resident of Traill County, North Dakota, is the Managing Member of DL Farms, and is a fifth-generation farmer.

[¶12]   RMA is a federal agency of the United States Department of Agriculture ("USDA") that manages the FCIC and regulates and oversees the administration of the Federal Crop Insurance Act, 7 U.S.C. § 1501 et seq.  RMA ensures that the federal crop insurance program is administered in accordance with the Act.

[¶13]   Upon information and belief, Marcia Bunger is the Administrator/SDO at RMA and is being sued in her official capacity as the SDO, the RMA official who issued the Suspension Notice, and in her official capacity as Administrator of RMA.  Defendant Bunger is subject to suit pursuant to 5 U.S.C. §§ 702-703.

## JURISDICTION AND VENUE

[¶14]  This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act §§ 500 et seq. 16.  Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this is an action against an agency of the United States, a substantial part of the events or omissions giving rise to this action occurred in this judicial district, and the Plaintiffs reside in this judicial district.

## FACTUAL BACKGROUND

[¶15]  Tronson is a fifth generation farmer, and has farmed his whole life.  Plaintiffs primarily grow potatoes, dry beans, and soybeans, but also include corn, wheat, and other commodities in their crop rotations.

[¶16]  Plaintiffs maintain a MPCI policy to protect themselves from unforeseen and unavoidable risks associated with farming.

[¶17]  March 15 of each year is the crop insurance "sales closing date", which is the deadline to obtain or report any changes to the MPCI policy (percentages or types of commodities, etc.).

[¶18]  In the years that Plaintiffs suffer insurable losses, they submit notices of those losses to the MPCI insurer, NAU Country Insurance ("NAU").  After NAU receives a notice of loss, they send out an adjuster to investigate/verify the cause of the loss and to approve/deny the claim.  Plaintiffs report all their insurable losses and generally have covered losses to varying extents each year.  There is no limit on the number of claims a participant can file.

[¶19]  Based on Plaintiffs' tendency to report all their covered losses, RMA began investigating Plaintiffs' farming practices in 2017.  RMA conducted numerous substantive

interviews of Tronson, several other area farmers, NAU adjusters and claims representatives who adjusted and reviewed Plaintiffs' 2017 and 2018 claims, Plaintiffs' employees, Plaintiffs' banker(s), and others that Plaintiffs work with in the community.

[¶20]   Upon information and belief, RMA's interviews and substantive investigation into Plaintiffs' farming practices concluded in early 2020.

[¶21]   In 2017 and 2018, DL Farms suffered insurable losses due to adverse weather and excessive rain fall.  DL Farms submitted notices of claims to NAU as it had in prior years.  NAU investigated the claimed losses, concluded insurable losses occurred that similarly impacted other area producers, and paid crop insurance indemnities for those losses.

[¶22]   DL Farms timely filed loss notices for its 2019 Traill County potato crop loss due to excess precipitation/cold wet weather. NAU adjusted DL Farms' potato loss, and determined there was an insurable cause of loss - "cold wet weather." 2019 was the wettest and coldest year recorded since 1900. The weather records evidenced 28+ inches of precipitation in 2019, which was over 200% of normal.

[¶23]   NAU completed a high dollar review and paid total indemnities of over $425,000 to DL Farms for its 2019 crop losses.  The indemnities included 40 acres of potatoes. NAU then applied the "uninsured cause of loss" to DL Farms' remaining potato claim alleging failure to follow recognized good farming practices ("GFP") for potatoes because DL Farms did not soil test or consult with an agricultural expert and issued its March 2, 2020, GFP determination.

[¶24]   Until Plaintiffs' 2019 notices of claim, NAU never questioned Plaintiffs' farming practices.  Upon information and belief, NAU's GFP determination was the result of the conclusion of RMA's investigation into Plaintiffs' farming practices.

[¶25]   DL Farms timely appealed NAU's GFP determination to RMA.

[¶26]   On September 10, 2020, RMA issued a GFP determination which found that DL Farms applied adequate amount of nitrogen fertilizer but failed to follow generally recognized good farming practices by not applying recommended rates of Phosphorus and Potassium to its 2019 potato crop.  RMA's GFP determination lacked any correlation between DL Farms' phosphorus and potassium fertility practices and its 2019 potato loss. RMA's determination was not proper and not made in accordance with applicable program regulations. RMA further disregarded expert opinions and NDSU's amended fertility recommendations.

[¶27]   On October 6, 2020, DL Farms timely filed a written request for reconsideration of RMA's September 10, 2020 GFP determination.

[¶28]   On March 29, 2021, the Deputy Administrator for Insurance Services RMA issued a GFP reconsideration determination for DL Farms upholding RMA's September 10, 2020, GFP determination.

[¶29]   Plaintiffs timely sought judicial review of RMA's reconsideration determination in an action styled <u>DL Farms, LLC v. United States Department of Agriculture, Federal Crop Insurance Corporation, and Risk Management Agency</u>, Case No. 3:21-CV-144.  That action remains pending before this Court.

[¶30]   On December 2, 2021, RMA filed a counterclaim against Plaintiffs in the action for judicial review related to purported false claims in connection with DL Farms 2017 and 2018 notices of loss.

[¶31]   After RMA's counterclaims were dismissed in the action for judicial review, RMA commenced a separate civil litigation against Plaintiffs in connection with the purported false claims styled United States of America v. Darren Wade Tronson and DL Farms LLC, Case No. 3:22-cv-00120.  That action remains pending before this Court.

[¶32]   On August 25, 2022, Tronson was indicted for purported false claims related to DL Farms 2017 and 2018 notices of claims.  See United States v. Darren Wade Tronson, 3:22-cr-00149.  That action remains pending before this Court.

[¶33]   On January 12, 2023, RMA, through Marcia Bunger as the SDO, issued the Suspension Notice to Plaintiffs immediately suspending them from participating in federal programs, including crop insurance.

[¶34]   The four-page Suspension Notice largely parrots experts of RMA's suspension authority under 2 C.F.R. § 180 et seq.  The SDO cited the criminal indictment as "adequate evidence" to support the suspension.

[¶35]   The RDO immediately suspended Plaintiffs from participating in "covered transactions under United States nonprocurement programs through the executive branch of the United States Government."

[¶36]   To support the immediate suspension the SDO indicated "[d]ue to the nature of the circumstances of your indictment and your potential involvement with a program of the Federal Government, immediate action is necessary to protect the public interest. See 2 CFR § 180.705(c)."  This conclusory explanation is merely a regurgitation of 2 C.F.R. §

180.705(c), which provides, in part, "the suspending official may infer the necessity for immediate action to protect the public interest either from the nature of the circumstances giving rise to a cause for suspension or from potential business relationships or involvement with a program of the Federal Government."

[¶37]   On February 16, 2023, Plaintiffs timely appealed the Suspension Notice to RMA. The primary basis of the appeal was the untimeliness of the action, to wit:  the Suspension Notice was issued nearly six years after RMA started its investigation, three years after RMA concluded its investigation, nearly two years after RMA upheld NAU's farming practices determination, thirteen months after RMA asserted a counterclaim in the judicial review, and nearly five months after the criminal indictment.

[¶38]   On February 23, 2023, Plaintiffs' Counsel attempted to contact Shelley Davis, Management Analyst, Appeals and Litigation Division, USDA, RMA via phone and email to discuss the status of Plaintiff's appeal given the impending March 15, 2023, crop insurance sales closing date.

[¶39]   On February 27, 2023, Davis responded via email that she was in receipt of Counsel's February 23, 2023, email and voicemail.  Later that day, Davis called Plaintiffs' Counsel and represented that RMA had not reviewed or taken action on Plaintiffs' appeal; that Plaintiffs were already suspended from federal crop insurance; that while no action had been taken on Plaintiffs' appeal, RMA does not lift suspensions based on pending indictments; and that RMA had no immediate response to Plaintiffs' timeliness arguments.

[¶40]   Meanwhile, trial in the criminal litigation was initially scheduled for December 2022, but has now been continued to March 2024.  The latest continuance was, in part, to abide resolution of the civil litigation involving intertwined factual issues concerning Plaintiffs'

2017 and 2018 notices of loss.  The government and Tronson stipulated that "counsel for the United States and for Darren Tronson stipulate and agree that the parties will be more likely to resolve this criminal case without trial after the completion of civil discovery and the resolution of the civil case, thereby conserving significant judicial resources."  <u>United States v. Darren Wade Tronson</u>, 3:22-cr-00149, Doc. # 31, ¶ 14.  Not only does this support Tronson's proposition that the indictment is being used as a settlement lever, but also showcases the government's unwillingness to expeditiously prosecute the very indictment upon which the Suspension Notice is based.

[¶41]   During the pendency and after the conclusion of RMA's investigation into Plaintiffs' farming practices, after RMA's asserted counterclaims and, subsequently, a civil litigation for purported false claims, and after Tronson's indictment, Plaintiffs continued to submit claims for insurable losses incurred during the 2020, 2021, and 2022 crop years.  NAU investigated and approved/paid indemnities for those years.  Plaintiffs' farming practices were not questioned in those years.

### Imminent and Irreparable Harm to Plaintiffs on Account of the Suspension Notice

[¶42]   As a result of RMA's Suspension Notice, Plaintiffs have and will suffer substantial and irreparable harm.

[¶43]   Since January 12, 2023, Plaintiffs have been suspended from participating in federal crop insurance.

[¶44]   Because Plaintiffs were paid disaster payments for potatoes, soybeans, and dry beans in 2021, Plaintiffs are unable to grow those commodities in 2023 without federal crop insurance or face repaying those indemnities.

[¶45] Plaintiffs will be forced to grow commodities such as corn and wheat in unprecedented quantities. Those commodities will be uninsured based on Plaintiffs' immediate suspension from federal crop insurance forcing Plaintiffs to assume an extraordinary and unjustified liability.

[¶46] Additionally, Plaintiffs' financial institution, Dakota Heritage Bank, is closing Tronson's deposit account based on the Suspension Notice. The Suspension Notice has caused Plaintiffs to be identified on the OFAC sanction list. It is uncertain whether Plaintiffs will be able to obtain another deposit account during the pendency of the Suspension Notice.

[¶47] Similarly, because of the Suspension Notice, Tronson faces the summary elimination of his livelihood as a fifth-generation farmer.

[¶48] Finally, Plaintiffs have suffered substantial reputational harm on account of RMA's representations that they have submitted false claims for crop indemnities in connection with their 2017 and 2018 potato crop.

## CLAIMS FOR RELIEF

### COUNT I: Violation of the Administrative Procedure Act

[¶49] Plaintiffs incorporate the foregoing paragraphs herein.

[¶50] The January 12, 2023, Suspension Notice against Plaintiffs constitutes final agency action.

[¶51] Pursuant to 2 C.F.R. 180.700, a suspending official may impose a suspension only when that official determines that there is: an indictment for an offense listed under Section 180.800(a), or, adequate evidence to suspect any other cause for debarment

listed under Section 180.800(b) through (d); and, immediate action is necessary to protect the public interest.

[¶52]  By issuing the Suspension Notice and suspending Plaintiffs, the RMA failed to make a prima facie showing that its findings were supported by "adequate evidence" and that there existed an "immediate need" for such action in accordance with 2 C.F.R. 180.700.

[¶53]  By failing to point to any evidence of "immediate need," and ignoring all contrary indications that there was no immediate need, the RMA abused its discretion and further failed to follow its own regulations. 2 C.F.R. 180.705(c).

[¶54]  As a result, the Suspension Notice should be vacated under 5 U.S.C. §§ 701- 706.

### COUNT II: Claim for Injunctive Relief

[¶55]  Plaintiffs incorporate the foregoing paragraphs herein.

[¶56]  Plaintiffs will be irreparably harmed (and have already been harmed) if the Suspension Notice remains in effect and is not vacated pending the conclusion of the criminal and civil litigations.

[¶57]  The harm to Plaintiffs far outweighs any harm to the RMA, particularly given that the agency has failed to point to any specific, non-conclusory "immediate need" for suspending Plaintiffs, coupled with the substantial delay.

[¶58]  These concerns outweigh any public interest the RMA has identified in issuing the Suspension Notice.

[¶59]  Plaintiffs are therefore entitled to preliminary and permanent injunctive relief under 5 U.S.C. § 702.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray for an order and judgment:

A. Declaring that the RMA acted in violation of the APA in issuing its Suspension Notice to Plaintiffs;

B. Vacating the Suspension Notice;

C. Issuing a temporary restraining order, and preliminary and permanent injunctive relief prohibiting the RMA from suspending Plaintiffs based on the current administrative record;

D. Remanding the matter to the RMA to continue the suspension process pending resolution of the pending criminal and civil proceedings; and

E. Granting such other and further relief as the Court deems just and proper.

Dated this 3rd day of March, 2023.

/s/ Matthew D. Kirschenmann
Michelle M. Donarski (ND #05316)
Matthew D. Kirschenmann (ND #08222)
ABST Law
4132 30th Ave S, Suite 100
P.O. Box 10247
Fargo, ND 58106-0247
(701) 235-3300
mdonarski@abstlaw.net
mkirschenmann@abstlaw.net
Attorneys for Plaintiffs